1

2

3

4

5

6

7

8                      **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  J.W., a minor, By and Through his parents          CASE NO. CV F 07-1625 LJO DLB
    J.E.W. and J.A.W.,
12
                          Plaintiff,                   **ORDER ON DEFENDANT'S SECOND**
13                                                     **MOTION TO DISMISS** (Doc. 34)

14        vs.

15
    FRESNO UNIFIED SCHOOL DISTRICT,
16
                          Defendant.
17  _____/

18                              **INTRODUCTION**

19        By notice on May 19, 2008, Defendant Fresno Unified School District ("District") moved to

20  dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), plaintiff J.W.'s ("Plaintiff's")[1] second amended complaint.

21  District contends that Plaintiff failed to exhaust his administrative remedies as to certain allegations,

22  alleges facts barred by the statute of limitations, and fails to state a claim for a violation of Section 504

23  of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §794 ("Section 504"). Plaintiff opposed this

24  motion on June 13, 2008.  District replied on June 23, 2008.  This Court found this motion suitable for

25  decision without a hearing and vacated the June 30, 2008 hearing.  For the reasons discussed below, this

26  Court GRANTS in full District's motion to dismiss with leave to amend.

27  _____

28        [1]Plaintiff J.W. is a minor proceeding by and through his parents J.E.W. and J.A.W.

                                            1

1

## BACKGROUND

2    Plaintiff is a minor child residing within the District's boundaries.  Plaintiff is eligible for special

3  education and related services because Plaintiff is hearing impaired.  Plaintiff was a student in District's

4  aural/oral/infant/preschool program at Birney Elementary School during the 1998-1999, 1999-2000,

5  2001-2002 and 2002-2003 school years.[2]  During the 2003-2004 and 2004-2005 school years, District

6  placed Plaintiff in a general education classroom at Bullard Talent Elementary School.  For the 2005-

7  2006 school year, Plaintiff attended Del Mar Elementary School.  Plaintiff alleges that during the 2003-

8  2006 school years, District failed to provide Plaintiff a free appropriate public education ("FAPE")

9  designed to meet his unique needs.  Plaintiff alleges that as a result of District's failure to provide

10  Plaintiff a FAPE, he has made only *de minimis* educational progress, if any, since 2003.

11    During the summer of 2006, Plaintiff attended Clarke School for the Deaf, a private school in

12  Massachusetts ("Clarke School").  Plaintiff's parents enrolled Plaintiff at Clarke School for the 2006-

13  2007 school year.  Plaintiff is no longer a District student.

14    On September 1, 2006, Plaintiff filed a due process proceeding against District.  On August 15,

15  2007, the administrative law judge ("ALJ") ruled against Plaintiff on all issues raised, with one

16  exception.   The ALJ found that District denied Plaintiff a FAPE substantively, by failing to offer

17  extended school year services during the 2005 summer.

18    Plaintiff initiated this action on November 8, 2007, alleging that the ALJ's decision was

19  erroneous and unsupported by evidence or law.  Plaintiff asserts claims based on:(1) the Individuals with

20  Disabilities Education Act ("IDEA"), 20 U.S.C.§ 1415(i)(2)(A); and (2) Section 504.

21    On January 17, 2008, the Ninth Circuit Court of Appeals issued *Mark H. v. Lemahieu*, 513 F.3d

22  922 (9th Cir. 2008) ("*Mark H.*"), a  decision to interpret a FAPE within the meaning of the IDEA and

23  Section 504.  In *Mark H.*, the Court also considered a student's private right of action pursuant to Section

24  504 FAPE regulations.  This Court granted in part District's motion to dismiss Plaintiff's Section 504

25  claim to allow Plaintiff to amend his complaint to conform to the *Mark H.* ruling.  (Doc. 29).  District

26  now moves to dismiss Plaintiff's Second Amended Complaint ("SAC"), filed on April 15, 2008.

27

28    [2]Unless otherwise specified, the elementary schools mentioned are located within the Fresno United School District.

**DISCUSSION**

**Motion to Dismiss Standard of Review**

District moves to dismiss Plaintiff's Section 504 claim pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). A Rule 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. A Rule 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds for his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) ("*Twombly*").

As a general rule, this Court does not consider material outside of the complaint, must accept as true the allegations of the complaint in question, and construe the pleading in the light most favorable to the party opposing the motion. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).

With these standards in mind, this Court turns to the merits of Plaintiff's motion to dismiss.

**Failure to Exhaust Administrative Remedies**

**Exhaustion Required**

Plaintiff must exhaust his administrative remedies before bringing federal claims regarding a denial of publicly funded special education under the IDEA and Section 504. The IDEA provides an administrative appeal procedure "to be pursued before seeking judicial review." *Hoeft v. Tuscon Unified School Dist.*, 967 F.2d 1298, 1302 (9th Cir. 1992); *see also*, *Robb v. Bethel School Dist.* #403, 308 F.3d 1047, 1050 (9th Cir. 2002). The exhaustion requirement of the IDEA explicitly applies to "other Federal laws protecting the rights of children with disabilities," including Section 504. 20 U.S.C. §1415(l) ("[B]efore filing the civil action under [title V of the Rehabilitation Act of 1973] seeking relief that is also available under this subchapter, the procedures ...of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter."). Thus, claims asserted under Section 504 are subject to the IDEA exhaustion requirement. *Babicz v. School Board*, 135 F.3d

3

1420, 1422 (11th Cir.), *cert. denied*, 525 U.S. 816 (1998).[3]  Accordingly, this Court lacks subject matter jurisdiction over claims Plaintiff failed to raise in the relevant administrative procedure. *Handberry v. Thompson*, 446 F.3d 335, 343 (2nd Cir. 2006).

When a motion to dismiss "attacks the substance of the complaint's jurisdictional allegations" the Court treats the motion as if it were "brought under [Fed. R. Civ. P.] 12(b)(1), even if it was improperly identified by the moving party as brought under Rule 12(b)(6)." *Corrie v. Caterpillar*, 503 F.3d 974, 980 (9th Cir. 2007) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)). "Under such circumstances, the Court may expand its review and rely on affidavits or any other evidence properly before the court." *Id.* (citing *Thornhill Publ'g Co. v. Gen Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733 (citing *Berardelli v. Castle & Cooke, Inc.*, 587 F.2d 37 (9th Cir. 1978)).

### Records Requests

Plaintiff alleges that on August 15, 2006, August 29, 2006, and April 17, 2007, Plaintiff requested specific copies of his school records from District. SAC ¶¶ 28-30.  Plaintiff pleads that District failed to produce all documents requested. SAC ¶¶ 30-31.  As it relates to his IDEA claim, Plaintiff alleges that the ALJ "failed properly to consider the claims raised...concerning procedural violations, including a denial of due process based on...District's failure to provide all student records requested, and Defendant District's destruction of student records, including, but not limited to, testing protocols." SAC ¶ 79.  Additionally, Plaintiff claims that District "denied Plaintiff's [procedural] rights under Section 504...by denying his parents the right to examine relevant records to ensure meaningful access to education and reasonable accommodations for his disabilities." SAC ¶ 101.

---

[3]The Court notes that where administrative remedies do not provide adequate relief, and Plaintiff seeks money damages, Plaintiff may not be required to exhaust administrative remedies before raising a Section 504 claim.  *Smith v. Barton*, 914 F.2d 1330, 1333 (9th Cir. 1990); *see also, Mark H. v. Lemahieu*, 513 F.3d 922, 935 n.11 (9th Cir. 2008) ("Because the § 504 FAPE requirement differs from the IDEA FAPE requirement, it is not clear how the exhaustion provision of § 1415(l) applies to suits for damages for failure to provide a § 504 FAPE. We need not reach this issue, because the H. family did exhaust the IDEA administrative remedies.)  Similarly, this Court need not address this issue, as neither party raised it.

District contends that Plaintiff failed to raise the issue of District's alleged failure to produce records at the administrative level.   In support of this argument, District submitted Plaintiff's Pre-Hearing Conference Statement, dated May 9, 2007 ("Statement") and the ALJ's Decision, dated August 14, 2007 ("Decision") (Declaration of Amy Levine, Exhibits B and F).  Plaintiff did not raise as an issue District's alleged failure to produce certain school records in the Statement.  Additionally, the ALJ's Decision did not frame as an issue District's alleged failure to produce records. However, the ALJ did not rely on the Statement to frame the issues Plaintiff raised.  Rather, the ALJ identified the issues to be examined as "those framed in the May 17, 2007 Order Following Prehearing Conference, as modified by the May 29, 2007 Order Granting in Part and Denying in Part [Plaintiff's] Motion to Clarify Issues." Decision, p. 2, n.2.  The Decision addressed only those issues as clarified in those two orders, and did "not rule on new claims raised in [Plaintiff's] closing brief." *Id*.  District did not provide this Court with the May 17, 2007 Order Following Prehearing conference nor the May 29, 2007 Order to Clarify Issues.

Plaintiff argues that the records issue was raised during the administrative hearing process, was ruled on by the ALJ, and is properly the basis of appeal.  Plaintiff avers that the issue of District's failure to produce records was raised during the pre-hearing conference on May 14, 2007, and during the hearing.  Plaintiff contends that although Plaintiff raised this issue, the ALJ failed properly to consider his claim that District failed to provide all student records requested. SAC ¶79.

To determine whether jurisdiction is proper, the Court first considers whether District's motion is a facial or factual attack on subject matter jurisdiction.  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Here, the Court is presented with a factual jurisdictional attack, because District disputes the truth of Plaintiff's allegations that the issue was raised in the administrative proceeding.  *See id.*; *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Moreover, in support of its position, District converted "the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court."  *Safe Air*, 373 F.3d at 1039.  Accordingly, this Court "may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if

necessary." *Thornhill*, 594 F.2d at 733.  This Court "need not presume the truthfulness of the plaintiff's

allegations" in a factual jurisdictional attack.  *Safe Air*, 373 F.3d at 1039 (citing *White v. Lee*, 227 F.3d

1214, 1242 (9th Cir. 2000).  Rather, in opposing District's challenge, Plaintiff must "furnish affidavits

or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v.*

*Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

Plaintiff failed to submit evidence to support his claim that the issue was raised or that the ALJ

"rendered rulings on the records issue."  Plaintiff impermissibly rests his claim entirely on the allegations

contained in his complaint. Plaintiff fails to establish that the records issue was exhausted at the

administrative level.  Plaintiff, as the party seeking to invoke this Court's jurisdiction, bears the burden

to establish subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S.

375, 377 (1994).  Because Plaintiff failed to present evidence in support of his claim, and may not rely

on his allegations alone, Plaintiff has not established subject matter jurisdiction.  Accordingly, Plaintiff's

records allegations are dismissed.

### Subsequent Claims

As discussed above, Plaintiff must exhaust his administrative remedies before this Court has

subject matter jurisdiction over his claims.  Plaintiff cannot seek to litigate claims in federal court that

arose subsequent to the time period at issue in the underlying proceeding. *See Metropolitan Board of*

*Public Educ. v. Guest*, 193 F.3d 457, 463 (6th Cir. 1999) (court exceeded its jurisdiction to the extent

it ruled on issues from subsequent school years not at issue in administrative hearing); *Jeremy H. v.*

*Mount Lebanon Sch. Dist.*, 95 F.3d 272, 283-84 (3d Cir. 1996) (claims arising after conclusion of

administrative hearing and claims not raised in that hearing must be exhausted, and cannot be raised in

due process appeal).  Plaintiff's amended request for due process hearing was filed on October 6, 2006,

and Plaintiff raised issues related to events occurring from September 1, 2003 through October 6, 2006.

Thus, Plaintiff may not raise issues based on events that occurred after October 6, 2006, as they could

not been raised, or exhausted, at the administrative level.

District argues that Plaintiff improperly seeks relief for two events that took place after the due

process request.  First, District argues that Plaintiff's latter records request allegations are subsequent

to the due process request.  As discussed more fully above, Plaintiff alleges that District refused to

1  produce certain school records that he requested from the District on April 17, 2007 and that on May 2,

2  2007, District informed Plaintiff that "the protocols [you] requested are no longer in existence." SAC

3  ¶31.  Second, District argues that Plaintiff asserts that District failed to assess Plaintiff and take other

4  actions "continuing through 2007." SAC ¶13.

5      Plaintiff does not oppose District's motion to dismiss on this issue.  Accordingly, issues relating

6  to the 2006-2007 school year are limited to events prior to the beginning of that school year (June 2006-

7  October 2006) and this Court lacks subject matter jurisdiction to consider Plaintiff's claims occurring

8  after October 6, 2006.

9                          **ALJ's Qualifications**

10     The IDEA guarantees Plaintiff a right to an impartial due process hearing and proscribes certain

11 qualifications a hearing officer should possess. 20 U.S.C. §1415(f).  Plaintiff submits that the ALJ lacked

12 the minimum qualifications of a hearing officer, as proscribed in 20 U.S.C. §1415(f)(3)(A). SAC ¶¶ 74,

13 77 -80.  Plaintiff alleges that the ALJ violated his rights by "failing to possess the knowledge and ability

14 to conduct hearings." SAC ¶80.  District argues that because Plaintiff failed to challenge the ALJ's

15 qualifications previously, Plaintiff did not exhaust his administrative remedies and is precluded from

16 raising this issue here.

17     Plaintiff did not exhaust his administrative remedies related to the ALJ's qualifications.  In

18 California, Plaintiff has the right to exercise a peremptory challenge to replace an assigned

19 administrative law judge. Cal. Gov. Code §1140(d); 2 Cal. Code of Regs., §§1034(a)-(b).  Plaintiff did

20 not avail himself of the administrative procedure to challenge the ALJ.  Although Plaintiff need not

21 exhaust administrative procedures where resort to the administrative process would be futile or

22 inadequate, *Hoeft v. Tucscon Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992), Plaintiff did not

23 argue that an exception to the exhaustion requirement applies.  Accordingly, Plaintiff's challenges to the

24 ALJ's qualifications are dismissed.

25                          **Statute of Limitations**

26     District argues that Plaintiff's IDEA and Section 504 claims must be dismissed to the extent that

27 Plaintiff's allegations fall outside of the statute of limitations.  Because the limitations periods for the

28 IDEA and Section 504 differ, this Court discusses each statute below separately.

**IDEA**

District argues that Plaintiff's allegations prior to September 1, 2003 are barred by the IDEA's statute of limitations. The applicable statute of limitations for Plaintiff's IDEA claim is three years from the date of the filing of the due process request. Cal. Educ. Code §5605(l) (2006).[4] Plaintiff initiated his request on September 1, 2006. Thus, the statute of limitations bars all issues arising before September 1, 2003.

Plaintiff concedes that he alleges facts that fall outside the IDEA's statute of limitations. Plaintiff points out that although the facts alleged to occur prior to September 1, 2003 are time-barred, the ALJ allowed Plaintiff "to challenge the services the District provided within the three-year statute of limitations based on "an event occurring prior to September 1, 2003; namely, the May 20, 2003 [individualized educational program ("IEP")]." Order Granting in Part [District's] Motion to Dismiss ("Order"), Declaration of Levine, Exhibit E, p. 2. Thus, "[w]hile the Complaint contains information regarding [Plaintiff] and the District that occurred before September 1, 2003, this information is for background purposes regarding the District's knowledge of [Plaintiff's] hearing and language impairments." Order, p. 3.

This Court agrees that facts alleged prior to September 1, 2003 are barred by the IDEA's statute of limitations. Plaintiff may not challenge conduct that occurred prior to that date, but may rely on allegations of events prior to September 1, 2003 for background purposes.

**Section 504**

Section 504 contains no statute of limitations. "[I]n the absence of a federal statute of limitations for claims arising under [a federal act], the controlling statute of limitations is the most appropriate one provided by state law." *Donoghue v. County of Orange*, 848 F.2d 926, 930 (9th cir. 1988) (citing *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462 (1975)). Courts generally apply the forum state personal injury statute of limitations to Section 504 claims. *See Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1135 (9th Cir. 2001). In California, the personal injury statute of limitations is two years. Cal. Code. Civ. P. §335.1. Therefore, Plaintiff's Section 504 claim is subject

---

[4]On October 9, 2006, the statute of limitations of due process filings became two years. 34 C.F.R. §300.507(a)(2); Cal. Educ. Code §5605(l) (2008).

1   to a two-year statute of limitations.[5]

2   Plaintiff contends that the Section 504 statute of limitations should be tolled during the period

3   of time he pursued his administrative remedies.  In the absence of a federal rule, "[a]long with the

4   limitations period, the court borrows the state's equitable tolling rules, absent a reason not to do so."

5   *Daviton*, 241 F.3d 1131, 1135.  In California, the "long settled rule [is] that whenever exhaustion of

6   administrative remedies is a prerequisite to a civil action the running of the limitations period is

7   suspended during the administrative proceedings." *Addison v. State*, 21 Cal.3d 313, 318 (1978) (citing

8   *Dillon v. Board of Pension Commrs.*, 18 Cal.2d 427 (1941)).  "[R]egardless of whether the exhaustion

9   of one remedy is a prerequisite to the pursuit of another, if the defendant is not prejudiced thereby, the

10   running of the limitations is tolled when an injured person has several legal remedies and, reasonably

11   and in good faith, pursued one." *Id.* (quoting *Elkins v. Derby*, 12 Cal. 3d 410, 414 (1974)).

12   Here, Plaintiff's Section 504 claim should be tolled.  Plaintiff filed his claim within the statutory

13   period and District was alerted "of the need to begin investigating the facts that form the basis" of the

14   Section 504 claim. *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 924 (1983).  Second, the facts of

15   the two claims are similar. *Id.*  Plaintiff's Section 504 claim is based on the evidence presented during

16   the IDEA administrative due process hearing, initiated on September 1, 2006.  Third, Plaintiff first

17   pursued, in good faith, the required IDEA administrative process. *Id.* at 926.  Plaintiff had several legal

18   remedies to pursue based on the same nucleus of facts; namely, to pursue the administrative process

19   through the IDEA, or to proceed directly with the civil action based on Section 504.  However, as this

20   Court recognized earlier, Plaintiff must exhaust his administrative remedies before filing a civil action.

21   Moreover, duplicative and simultaneous proceedings in federal court and in the administrative process

22   based on the same set of facts would be "inefficient, awkward, and laborious." *Elkins v. Derby*, 12 Cal.

23   3d 410, 420 (1974).  Therefore, Plaintiff's Section 504 two-year statute of limitations is tolled for the

24   period of the administrative process, which lasted for 348 days (September 1, 2006-August 14, 2007).

25   "While state law determines the period of limitations, federal law determine when a cause of

26   action accrues." *Cline v. Brusett*, 661 F.2d 108, 110 (9th Cir. 1981).  "Under federal law a cause of

27

28   [5]Because the IDEA statute of limitations changed to two years in 2006, future actions based on both the IDEA and Section 504 will not have differing statutes of limitations.

1   action accrues, and the statute of limitations begins to run, when a plaintiff knows or has reason to know

2   of the injury that is the basis of the action."*Alexopulos v. San Francisco Unified School District*, 817

3   F.2d 551, 555 (1987).  Plaintiff knew or should have known that he was injured at the time the District

4   caused each of the alleged injuries, including failure to provide a FAPE for the specific school years.

5   *See id.*  Accordingly, Plaintiff's Section 504 cause of action is dismissed to the extent it relies on events

6   that occurred prior to November 25, 2004, as they accrued more than 2 years, 348 days prior to the filing

7   of this lawsuit.[6]

8                                    **Section 504 Allegations**

9            The parties interpret differently the Ninth Circuit Court of Appeals decision that examines the

10  relationship between, and the private rights of action under, the IDEA, Section 504, and Section 504's

11  implementing regulations.   In *Mark H.*, the Ninth Circuit sought to clarify the "fundamental

12  misunderstanding" between the IDEA FAPE and the FAPE identified in the Section 504 regulations. 513

13  F.3d at 924.  This Court is among the first to interpret and apply *Mark H.  See Wiles v. Dept. of Educ.*,

14  – F. Supp.2d. –, 2008 WL 1912467, n. 13 (D. Haw. 2008) (citing this Court's order on District's first

15  motion to dismiss as the only interpretation of the *Mark H.* decision).  As such, the Court provides a

16  brief background of the statutory context and the *Mark H.* decision before it begins its analysis.

17                                          **IDEA**

18           The IDEA is a "comprehensive educational scheme, conferring on disabled students a substantive

19  right to public education." *Hoeft*, 967 F.2d 1298, 1300.  The IDEA ensures that "all children with

20  disabilities have available to them a free appropriate public education [FAPE] that emphasizes special

21  education and related services designed to meet their unique needs and prepare them for further

22  education, employment, and independent living." 20 U.S.C. §1400(d)(1)(A).  According to the IDEA,

23  a FAPE is

24           special education and services that–(A) have been provided at public expense, under
             public supervision and direction, and without charge; (B) meet the school standards of
25           the State educational agency; (D) include an appropriate preschool, elementary school,
             or secondary school education in the State involved; and (D) are provided in conformity
26           with the individualized education program [IEP] required under section 1414(d) of this
             title.

27

28           [6]Date calculations were made using http://timeanddate.com.

                                           10

20 U.S.C. §1401(9).  To provide a FAPE in compliance with the IDEA, a state educational agency receiving federal funds must evaluate a student, determine whether that student is eligible for special education and services, conduct and implement an IEP, and determine appropriate educational placement of the student, as described in detail in 20 U.S.C. §1414.

### Section 504

Section 504 of the Rehabilitation Act of 1973 is a general civil rights provision "to prevent discrimination against all handicapped individuals...in employment, housing, transportation, education, health services, or any other Federally-aided programs." *Alexopulos*, 817 F.2d at 554; *see also,* 29 U.S.C.S. §794 (applying Section 504 to*, inter alia*, airlines, banks, railroads, medical facilities, the United States Postal Service, prisons, county animal control units, and government contractors).  Section 504 provides: "No otherwise qualified individual with a disability...shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. §794(a).

Section 504 applies to all public schools that receive federal financial assistance. *Mark H.*, 513 F.3d at 938 (referencing 29 U.S.C. §794(b)(2)(B)).  A "public entity can be liable for damages under [Section]504 if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Mark H.*, 513 F.3d at 938.  Section 504 allows students who are denied meaningful access to state educational benefits to seek "the full panoply of remedies, including equitable relief and [compensatory] damages*.  Mark H.,* 513 F.3d at 930 (quoting *Greater L.A. Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1107 (9th Cir. 1987)); *see also*, *Kling v. County of Los Angeles*, 633 F.2d 876 (9th Cir. 1980).

### Applicable Section 504 Regulations

While Section 504 does not require a FAPE or procedural safeguards in an educational setting, its implementing regulations do.  United States Department of Education ("U.S. DOE") regulations were promulgated to interpret Section 504.  *See* 34 C.F.R. §§104.1-104.61.  34 C.F.R. §104.33 requires recipients of federal funds to "provide a free appropriate public education [FAPE] to each qualified

handicapped person."   34 C.F.R. §104.33(a).   The U.S. DOE regulations define an "appropriate education" as:

> regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of [34 C.F.R.] §§104.34, 104.35, and 104.36.

The cross-referenced U.S. DOE regulations impose requirements similar to the IDEA with respect to identification, evaluation and placement of disabled students.  *Compare* 34 C.F.R. §§104.32-.35 *with* 20 U.S.C. §§1415(b)(6) and (k).  Under Section 504 regulations, recipients of federal funding generally must place handicapped individuals in a "regular educational environment" and, if removed to an individualized environment, must be placed in an environment "comparable" to that used by non-disabled students. 34 C.F.R. §104.34.  Federally-funded elementary schools must evaluate the student and ensure proper placement.  Additionally, the U.S. DOE regulations require recipients of federal funding that operate public schools to establish and implement

> a system of procedural safeguards that includes notice, an opportunity for the parents or guardian of the person to examine relevant records, an impartial hearing with opportunity for participation by the person's parents or guardian and representation by counsel, and a review procedure.  Compliance with the procedural safeguards of section 615 of the [IDEA] is one means of meeting this requirement.

34 C.F.R. §104.36.

### *Mark H.* Ruling

The *Mark H.* Court considered the IDEA and the applicable Section 504 regulations and ruled: (1) the FAPE requirements in the IDEA and the 504 regulations are "overlapping but different"; (2) the availability of relief under the IDEA does not limit the available of a damages remedy under Section 504 regulations; and (3) a private right of action exists to enforce Section 504 regulations to the extent that the regulation "authoritatively construes" the statute.

### Differing FAPE standards

The "FAPE requirements in the IDEA and in the [Section] 504 regulations are, in fact, overlapping but different." *Mark H.*, 513 F.3d at 924.  "[U]nlike FAPE under the IDEA, FAPE under [Section] 504 is defined to require a comparison between the manner in which the needs of disabled and non-disabled children are met, and focuses on the "design" of a child's educational program." *Id.* at 933.

12

1  As defined by the regulations, a Section 504 FAPE requires education and services "*designed* to meet

2  individual educational needs of handicapped persons *as adequately as* the needs of nonhandicapped

3  persons are met." 34 C.F.R. §104.33(b)(1)(emphasis added).  The comparative analysis of Section 504

4  differs significantly from the IDEA individualized analysis.

5  **Availability of Relief**

6  　　Whether, and to what extent, a plaintiff may obtain relief from both the IDEA and Section 504

7  has changed throughout the years.  Originally, the United States Supreme Court ruled, in *Smith v.*

8  *Robinson*, 468 U.S. 992, 1019 (1984), that "remedies, rights, and procedures" available under the IDEA

9  were the exclusive relief for failure to provide a FAPE.  Thus, a plaintiff's IDEA claim precluded a

10  Section 504 claim, and its available remedies.  *Id.*  Congress responded to the *Smith* decision by adopting

11  20 U.S.C. §1415(l), which provides: "Nothing in this chapter shall be construed to restrict or limit the

12  rights, procedures, and remedies available under...title V of the Rehabilitation Act of 1973, or other

13  Federal laws protecting the rights of children with disabilities."  Congress superceded *Smith* with the

14  passage of 20 U.S.C. §1415(l) to "preserve[] all rights and remedies under the Rehabilitation Act." *Mark*

15  *H.*, 513 F.3d at 934.  Therefore, the *Mark H.* court concluded that "availability of relief under the IDEA

16  does not limit the availability of a damages remedy under [Section] 504 for failure to provide the FAPE

17  independently required by [Section] 504 and its implementing regulations." 513 F.3d at 935.  Moreover,

18  the *Mark H.* court ruled that Section 504 damages are not limited to attorneys' fees, but include the full

19  range of damages remedies.  *Id.*

20  **Private Right of Action to Enforce Regulations**

21  　　According to the *Mark H.* court, Section 504 does not "merely prohibit intentional

22  discrimination." 513 F.3d at 935.  Rather, "the focus of the prohibition in [Section] 504 is 'whether

23  disabled persons were denied 'meaningful access' to state-provided services.'" *Id.* at. 937 (quoting

24  *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996)).  Thus, a court errs to conclude that the

25  Section 504 FAPE regulations create unenforceable "affirmative obligations" without considering that

26  they are intended, arguably, "to ensure 'meaningful access' to public education." 513 F.3d at 935, 938

27  n.14.  Accordingly, "to the degree the [Section] 504 FAPE regulations [a plaintiff] invokes can be

28  interpreted as a variety of meaningful access regulation, they will fall within the [Section] 504 implied

1   cause of action." *Mark H.*, 513 F.3d at 939.

2          Because the plaintiff in *Mark H.* did not invoke specific Section 504 regulations, the Court did

3   not rule on whether certain Section 504 FAPE regulations were a privately enforceable "variety of

4   meaningful access regulation." The Court did offer the following guidance:

5          We observe that a number of the [Section] 504 FAPE regulations are arguably intended
           to ensure "meaningful access" to public education.  In particular, a disabled individual

6          may be denied "meaningful access" to public education when that education is not
           designed to meet her needs as adequately as the needs of other students are met. *See* 34

7          C.F.R. §104.33.  The FAPE regulations also require adherence to certain procedures
           intended to facilitate provision of a FAPE, including testing and evaluation, 34 C.F.R.

8          §104.34, and notice to parents of educational plans for their children. 34 C.F.R. §104.36.
            Depending on the particular circumstances, testing and evaluation of a disabled child

9          may be necessary to ensure "meaningful access" to an appropriate education, as might
           notice to a child's parents of the educational plan for that child.

10

11   513 F.3d at 938 n.14.  Additionally, the Court ruled that a plaintiff may have a private right of action to

12   enforce a Section 504 FAPE, because "§ 104.33 requires a comparison between the treatment of disabled

13   and nondisabled children, rather than simply requiring a certain set level of services for each disabled

14   child."  *Id.* at 936.  Therefore, to satisfy Section 504 regulation FAPE requirements, "school districts

15   need only design education programs for disabled persons that are intended to meet their educational

16   needs to the same degree that the needs of nondisabled students are met, not more." *Id.* at 936-37.

17                                            **Analysis**

18          To determine whether Plaintiff states a claim pursuant to Section 504 and its implementing

19   regulations, the Court employs a two-part process.  First, the Court will consider whether Plaintiff states

20   a claim for relief pursuant to Section 504 and Section 504 FAPE regulations.  If Plaintiff states a claim

21   for relief, the Court will determine whether Plaintiff has a private right of action to enforce the specific

22   Section 504 FAPE regulations upon which he relies.

23                                      **Failure to State a Claim**

24          To state a Section 504 claim, Plaintiff must allege that: (1) he is an individual with a disability;

25   (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely

26   by reason of his disability; and (4) the program receives federal financial assistance. *Duvall v. County*

27   *of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).  A "public entity can be liable for damages under

28   [Section]504 if it intentionally or with deliberate indifference fails to provide meaningful access or

reasonable accommodation to disabled persons." *Mark H.*, 513 F.3d at 938.  To assert discrimination in the education context, "something more than a mere failure to provide the 'free appropriate education' required by [IDEA] must be shown." *Sellers by Sellers v. Sch. Bd. of City of Manassas,* 141 F.3d 524, 529 (9th Cir. 1998), citing *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982).  That is, although implementation of an IEP, within the meaning of the IDEA,  is *one means* of meeting the Section 504 FAPE requirements,[7] "Plaintiffs who allege a violation of the FAPE requirement contained in [Section] 504 regulations, consequently, may not obtain damages simply by proving that the IDEA FAPE requirements were not met." *Mark H.*, 513 F.3d at 933.

District's alleged violation of Section 504 FAPE regulations may demonstrate its failure to provide Plaintiff with "meaningful access" to education.  Here, however, Plaintiff failed to allege any facts to support a conclusion that District violated Section 504 and its implementing regulations.  Although Plaintiff specified the Section 504 regulations upon which he relies, he fails to explain "in what regard" the Section those regulations were violated.  *Mark H.*, 513 F.3d at 925.  No facts support Plaintiff's claim that District "failed to appropriately identify all Plaintiff's areas of disability." SAC ¶93 (citing 34 C.F.R. §104.32).  Rather, District recognized his area of disability and placed Plaintiff in the "aural/oral" program pre-school and kindergarten. SAC ¶12.  Plaintiff's allegations do not support the conclusion that District "failed to educate Plaintiff with non-disabled students to the maximum extent appropriate" and "failed to educate Plaintiff in the regular educational environment." SAC ¶¶97, 98 (citing 34 C.F.R. §104.34).  Instead, Plaintiff alleges that District placed him in a general education classroom inappropriately. SAC ¶15.

As to the Section 504 FAPE regulations related to failure to design, implement and provide a FAPE, Plaintiff impermissibly relies on his general allegations to support his Section 504 claim.  Plaintiff's Section 504 cause of action incorporates by reference all prior paragraphs in the SAC, including all allegations Plaintiff makes in connection with his IDEA claim.  Plaintiff fails to identify which factual allegations are specific to his Section 504 claim and fails to distinguish between his IDEA and Section 504 FAPE claims.  As in *Mark H.*, Plaintiff wrongfully "assumed that alleging a violation

---

[7]34 C.F.R. §104.33(b)(2) (emphasis added)

15

1   of the IDEA FAPE requirement is sufficient to allege a violation of [Section] 504." 513 F.3d at 925.

2   District correctly points out that all allegations that relate only to Plaintiff's IDEA claim should be

3   dismissed as to Plaintiff's Section 504 cause of action.  The need to differentiate allegations is

4   particularly present in this action, where the statutes of limitations differ.  However, Plaintiff does not

5   distinguish the factual allegations and the causes of action.  "Without some clarity about precisely which

6   [Section] 504 regulations are at stake *and why*, we cannot determine whether [Plaintiff] has sufficiently

7   alleged a privately enforceable cause of action for damages [pursuant to Section 504]." *Id.* (emphasis

8   added).

9        Moreover,  Plaintiff alleges no facts to support the comparative requirement of Section 504 and

10  Section 504 FAPE regulations.  An analysis of whether District failed to provide Plaintiff Section 504

11  FAPE pursuant to 34 C.F.R. §104.33 "requires a comparison between the treatment of disabled and

12  nondisabled children, rather than simply requiring a certain set level of services for each disabled child."

13  *Mark H.,* 513 F.3d at 936.  Plaintiff alleges no facts that support a conclusion, viewed in a light more

14  favorable to Plaintiff, that Plaintiff was denied meaningful access to education because of his disability.

15  Significantly, and fatally, Plaintiff continues to rely on his IDEA FAPE allegations, which have an

16  individual, rather than comparative focus.  Plaintiff asserts that District failed to provide a certain level

17  to services to him, but does not provide any facts to support a comparison between the treatment of

18  disabled and nondisabled children in the District.  These allegations are insufficient to state a Section

19  504 claim. *Id.*

20       Although Plaintiff must explain why Section 504 and its implementing regulations were violated,

21  Plaintiff is not held to a heightened pleading standard.  Plaintiff must plead "only enough facts to state

22  a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974.  Here, rather than allege facts,

23  Plaintiff's Section 504 claim relies solely on Plaintiff's recitation of the Section 504 implementing

24  regulations language. *See* SAC ¶¶ 92-103.  "While a complaint attacked by a Rule 12(b)(6) motion to

25  dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

26  'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the

27  elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1965 (citations omitted).  Plaintiff

28  relies on, and repeats, the Section 504 regulations language to form the basis for each regulation asserted,

1of 17

but provides no supporting facts to state a claim for relief.  Because Plaintiff provides no grounds for relief and relies on a formulaic recitation of the Section 504 FAPE regulations, Plaintiff fails to state a Section 504 claim.[8]

## **CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1.    GRANTS District's motion to dismiss Plaintiff's allegations of District's failure to produce records;

2.    GRANTS District's motion to dismiss Plaintiff's allegations of claims arising subsequent to Plaintiff's due process request;

3.    GRANTS District's motion to dismiss Plaintiff's allegations challenging the ALJ's qualifications;

4.    GRANTS District's motion to dismiss Plaintiff's allegations that occurred outside the applicable statute of limitations for each of Plaintiff's claims;

5.    GRANTS District's motion to dismiss Plaintiff's Section 504 cause of action, for failure to state a claim;

6.    GRANTS Plaintiff leave to amend his complaint;

7.    ORDERS Plaintiff, no later than July 30, 2008, to file and serve an amended complaint;

8    CONTINUES the July 15, 2008 scheduling conference to August 26, 2008.


IT IS SO ORDERED.

**Dated:     July 9, 2008**                              **/s/ Lawrence J. O'Neill**
                                                UNITED STATES DISTRICT JUDGE

---

[8] Because this Court finds that Plaintiff failed to state a claim for relief, the Court need not address whether Plaintiff has a private right of action to enforce each of the Section 504 FAPE regulations cited.

17